UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
AT KANSAS CITY

| | |
|---|---|
| DEANNA OAKES and JINGER BAKER, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br> v.<br>27 BISCUITS, LLC, et al.<br><br>Defendants. | Case No. 2:22-cv-02395-JAR-TJJ |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS**

**I. INTRODUCTION**

  Plaintiffs Jinger Baker and Deanna Oakes, and Opt-In Plaintiffs Tricia Wenzl, Andrea Rodriguez, Desiree Helton, and Taylor McCarthy (collectively "Plaintiffs") and Defendants 27 Biscuits, LLC, and all other named defendants (collectively "Big Biscuit") hereby jointly move for the Court's review and approval of the settlement and release agreements between Plaintiffs and Big Biscuit, and for entry of a stipulated order dismissing with prejudice all claims in this action pursuant to Fed.R.Civ.P. 41(a)(1)(ii), with each party to bear, his, her or its own attorneys' fees and costs. The reasons for this Joint Motion are set forth more fully below.

  1. Plaintiffs Deanna Oakes and Jinger Baker brought this action pursuant to the Fair Labor Standards Act ("FLSA") claiming Big Biscuit violated the FLSA in the operation and utilization of the "tip credit," thus, failed to pay the Plaintiffs minimum wage. Big Biscuit denies their allegations and asserts that it properly claimed a tip credit against their wages in compliance with the law. The remaining four Plaintiffs filed opt-in notices to join this case, and asserted identical allegations to that of Oakes and Baker. Big Biscuit similarly denies those allegations.

2. The Parties entered into the Agreements which provide for settlement and dismissal of all claims, brought by the Plaintiffs, with prejudice.

3. The terms of each of the six Agreements between the Plaintiffs and Big Biscuit are identical, except for the amount of wages and liquidated damages components.

4. The amount of wages and liquidated damages paid to each plaintiff was determined based on the relative number of workweeks that they worked in the relevant time period, rounded to clean numbers.

5. Each has been reduced to writing and a fully executed copy of each is attached as Exhibits A-F.

6. Pursuant to the terms of these Agreements, Big Biscuit has offered to pay each Plaintiff as follows:

1. $4,500 to Deanna Oakes, divided into equal portions for wages and liquidated damages. Oakes's employment period spanned 179 workweeks in the maximum statutory period.

2. $4,500 to Jinger Baker, divided into equal portions for wages and liquidated damages. Baker's employment period spanned 161 workweeks in the maximum statutory period.

3. $4,500 to Tricia Wenzl, divided into equal portions for wages and liquidated damages. Wenzl's employment period spanned 171 workweeks in the maximum statutory period.

4. $3,000 to Desiree Helton, divided into equal portions for wages and liquidated damages. Helton's employment period spanned 95 workweeks in the maximum statutory period.

5. $1,000 to Andrea Rodriguez, divided into equal portions for wages and liquidated damages. Rodriguez's employment period spanned 11 workweeks in the maximum statutory period.

6. $1,000 to Taylor McCarthy, divided into equal portions for wages and liquidated damages. McCarthy's employment period spanned 43 workweeks in the maximum statutory period.

7. Additionally, counsel will receive a gross sum of $13,000 in attorney's fees and costs. This amount is equal to $2,166.67 per Plaintiff, and is reflected as such in each individual Settlement Agreement.

## MEMORANDUM OF LAW

There are two ways in which claims under the FLSA can be settled and released by employees. First, Section 216(c) of the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. See § 29 U.S.C. 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b), an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Id.*

In detailing the circumstances justifying court approval of a FLSA settlement in a litigation context, the District of Kansas has provided that to approve an FLSA settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorney fees. See *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011).

### A.     There Is A Bona Fide Dispute.

To establish that there is a bona fide dispute, the parties should provide the following information: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* at *2.

Here, all of the Plaintiffs worked as servers as Big Biscuit's restaurants. During the relevant time frame (extending three years before their respective consents to join this case), the Plaintiffs' employment with Big Biscuit spanned the following approximate periods: Deanna Oakes: October 3, 2019 to March 8, 2023; Tricia Wenzl: October 24, 2019 to January 30, 2023; Jinger Baker: October 3, 2019 to October 28, 2022; Desiree Helton: October 24, 2019 to August 15, 2021; Andrea Rodriguez: August 17, 2020 to November 1, 2020; and Taylor McCarthy: October 24, 2019 to August 15, 2020.

There is no dispute about the hours actually worked by the Plaintiffs. The only dispute concerns whether it was appropriate for Big Biscuit to claim a "tip credit" in connection with their work as servers.

Under the FLSA, an employer may take a "tip credit" by paying tipped employees a lower tipped hourly rate instead of the minimum wage. 29 U.S.C. § 203(m). For example, in Kansas, an employer may pay a server as little as $2.13 per hour and then take a tip credit of up to $5.12 per hour-which is composed of the server's tips. There is no dispute that this is what Big Biscuit did.

Plaintiffs' theory in this case however is that Big Biscuit required them to perform "tip-supporting work" for more time than is permitted by an "80/20 rule" that they claim applies. Under the claimed 80/20 Rule, an employer may not take any tip credit for time an employee spent performing untipped work that is not part of the tipped occupation; i.e., work that is either tip-producing or directly supporting the tip-producing work. *See* 29 C.F.R. § 531.56(f)(1). Additionally, an employer may only take a tip credit for time an employee spends performing related, but untipped, duties if the employee spends twenty percent or less of their time performing related duties. Under the 80/20 Rule:

> [A] server who spent two hours or less filling salt shakers during a ten hour shift, and who spent the remainder of his or her shift waiting on customers, could be paid $2.13 an hour for all of the hours he or she worked. But a server who spent more than two hours filling salt shakers and performing other related untipped work would be engaged in dual jobs, and must be paid the full minimum wage for all hours spent performing related untipped work.

*Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 522 (E.D. Pa. 2019).

Big Biscuit maintains that, for the periods it pays its servers less than $7.25 per hour, those servers devote significantly more than 80% of the time doing work that is tip-producing. To the

7

extent that servers must perform work before or after customers are in the restaurants, those servers are paid the full applicable minimum wage.

### B. The Settlement Is Fair And Reasonable.

In determining whether a proposed settlement is fair and equitable under the FLSA, the Court looks to the following factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Peter v. Care 2000 Home Healthcare Services*, 2012 WL 5897618 at *1-2 (D. Kan. Nov. 20, 2012).

For the reasons set forth above, Big Biscuit maintains that none of the servers would be entitled to any recovery whatsoever. Nonetheless, after an arms' length negotiation, the Parties elected to resolve this action. The risks faced by both Parties regarding the complexity and expense of the litigation support the determination that this settlement is fair and reasonable, and the Court should approve it. Ultimately, due to the risks associated with continuing to litigate this tip-credit case—and, for Big Biscuit, due to the cost, time, and business distraction associated with continued litigation through its anticipated summary judgment motion—the Parties each believe the settlement reached is fair and reasonable. Based on information that they have learned throughout the litigation, Plaintiffs and their counsel believe that the settlement amount represents a fair accounting of Plaintiffs they could possibly be owed on their FLSA claims even if they were able to establish any liability after significant litigation and risk. Although the range outcomes for Plaintiffs in this could range from no recovery at all to backwages and liquidated damages in every

shift they ever worked, they also recognize that their responsibilities and tip-producing activities varied from shift-to-shift. Again however, if this Court (or, if necessary, an appellate court) rules in Big Biscuit's favor, Plaintiffs could be left with nothing. For this reason alone, the Parties' negotiated settlement is fair and reasonable.

To that end, the amount of wages and liquidated damages paid to each Plaintiff corresponds roughly with the amount of shifts that they performed for Big Biscuit in the relevant time period. The Plaintiffs will collectively receive $18,500.00, not including the attorneys' fees and costs. On the low end, the Plaintiffs who worked the least amount of time for Big Biscuit will receive $1,000. On the high end, the Plaintiffs who worked in excess of 100 workweeks for Big Biscuit in the relevant time period will receive $4,500.00.

These figures generally correspond to $20 per workweek in damages. For instance, if Deanna Oakes was able to establish that, during each of the 179 workweeks that she worked in the relevant statutory period she spent a total of four hours performing work where no tip credit should have been taken, she'd be entitled to or 4 hours of $20.48 per week in damages or $3,665.92. If she spent 30 minutes each morning before the restaurant opened setting up the restaurant, and was only paid $2.13 per hour for that time (an allegation that Big Biscuit denies), that would only equate to 2.5 hours per week of compensable time. Again, considering the legal and factual disputes underpinning this action, her recovery of $4,500.00 constitutes a very fair and reasonable resolution. Similar (and even more generous) metrics apply to the other plaintiffs when considering the $20 or 4 hours per week of backpay compared with their maximum workweeks. Of course, these plaintiffs did not actually work in each and every one of these workweeks nor did they work 5 shifts per week in that time period.

9

### C. THE AGREED ATTORNEY FEES AND COSTS ARE REASONABLE.

In this settlement, the Plaintiffs will collectively receive $18,500.00, not including the attorneys' fees and costs. The Settlement Agreements also contain an award of reasonable attorneys' fees. Specifically, counsel will receive $13,000.00. Counsel expended significant time and resources on this case, investigating, drafting pleadings, and engaging in discovery.

In determining the reasonableness of an attorney fee award, Courts in the Tenth Circuit use the "hybrid method," which includes consideration of the lodestar amount in addition to the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Hobbs v. Tandem Environmental Solutions, Inc.*, 2012 WL 4747166 (D. Kan. 2012). The "lodestar" amount is determined by multiplying the number of hours worked by the prevailing hourly rates. *Id.* (citing *Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1669 (2010)).

Here, attorneys for Plaintiff, after reviewing their time and making appropriate reductions based on their billing judgment, have spent 70 hours on the matter. Further, the Plaintiff's counsel contends that his rate of $500 per hour is a fair and reasonable market rate for attorneys in the Kansas City metro area as that amount is within the customary fee charged by attorneys in the Kansas City metro area.

Using the proffered reasonable fee of $500 per hour, the lodestar amount equals $35,000.00. However, despite the lodestar amount being larger, the parties have negotiated and agree that a total amount of $13,000.00 is a reasonable attorney fee under the circumstances. The negotiated amount brings the effective hourly down to $260 per hour.

### **CONCLUSION**

The settlement presented is an immediate, real, substantial, and fair settlement. Claimants,

therefore, respectfully request that the Court approve the Settlement Agreements as provided in Exhibits A-F in their entirety.

<table>
<tr><td>

/s/ Michael Hodgson
Michael Hodgson, KS Bar No. 21331
The Hodgson Law Firm, LLC
3609 SW Pryor Rd.
Lee's Summit, Missouri 64082
mike@thehodgsonlawfirm.com
(p) 816.600.0117
(f) 816.600.0137

Attorneys for Defendants

</td><td>

/s/ James. J. Swartz
Michael L. Blumenthal, KS Bar #18582
SEYFERTH BLUMENTHAL & HARRIS LLC
4801 Main Street, Suite 310
Kansas City, MO 64112
Telephone:    (816) 756-0700
Facsimile:    (816) 756-3700
Email: mike@sbhlaw.com

James J. Swartz (admitted pro hac vice)
Alexander Simon (admitted pro hac vice)
Ariel D. Fenster (admitted pro hac vice)
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E. Suite 2500
Atlanta, GA 30309
Telephone:    404-888-1500
Facsimile:    404-724-1575
Email: jswartz@seyfarth.com
asimon@seyfarth.com
afenster@seyfarth.com
Attorneys for Defendants

</td></tr>
</table>